IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CV-73-FL

| | | |
|---|---|---|
| MARION EGLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| AMERICAN AIRLINES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment (DE 30). Plaintiff has responded in opposition and defendant has replied. In this posture, the issues raised are ripe for ruling. For the following reasons, the motion is granted.

## STATEMENT OF THE CASE

Plaintiff, a former employee of defendant, commenced this action on February 10, 2017, asserting that she was terminated due to disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. ("ADA"); that she was discriminated and retaliated against for exercise of her rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq. ("FMLA"); and that she was wrongfully discharged in violation of the North Carolina law. Plaintiff seeks declaratory and injunctive relief returning plaintiff to her prior position, as well as compensatory and liquidated damages.

On February 22, 2018, the court upon defendant's motion dismissed plaintiff's ADA claim (count I) and North Carolina common law claim (count III). The court entered case management order, as amended, setting deadline for discovery on April 28, 2018, and deadline for dispositive

motions on May 27, 2018.

Defendant filed the instant motion on May 24, 2018, relying upon a memorandum of law, a statement of material facts, and an appendix thereto, containing the following: 1) plaintiff's deposition, with exhibits; 2) declarations by defendant's employees, Tamara Wells ("Wells"), Dee Hart ("Hart"), and Kip Hamilton ("Hamilton"), each with exhibits; and 3) declaration of plaintiff's physician, Dr. Raj Polavaram ("Polavaram").

Plaintiff filed a response in opposition, relying upon an opposing statement of facts and appendix thereto, containing the following: 1) a declaration by Polavaram; 2) a written statement by plaintiff; 3) a fax cover sheet to Polavaram; 4) faxed correspondence pertaining to FMLA leave; 5) excerpts of plaintiff's deposition; and 6) excerpts of Polavaram's deposition.

Defendant filed a reply on July 13, 2018.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts pertinent to the instant motion may be summarized as follows. American Airlines, Inc. (herein referenced in the statement of the facts as "American Airlines" or the "Company") employed plaintiff as a Reservations Agent at the South Eastern Reservations Office ("SERO"). (Def's Stmt. (DE 32) ¶1).[1] As an American Airlines employee, plaintiff was subject to the Company's Rules of Conduct which, among other things, prohibit the "[m]isrepresentation of facts or falsification of records," "[d]ishonesty of any kind in relation with the Company . . . ," and "misrepresentation in obtaining employee benefits or privileges," and warn that violations of any kind can lead to discipline up to and including termination. (Id. ¶2).

---

[1] The court cites to defendant's statement of undisputed material facts for each numbered paragraph where it is not specifically controverted by a correspondingly numbered paragraph in plaintiff's statement of material facts (DE 38), pursuant to Local Civil Rule 56.1(a)(2).

Between 2006 and 2013, plaintiff applied for, and American Airlines granted, at least thirty-four separate requests for FMLA leave. (Id. ¶3). American Airlines' FMLA Certification Forms caution employees that "misrepresentation of any kind" in the FMLA application process violates the Company's Rules of Conduct and can lead to termination. (Id. ¶4). Likewise, the Letter of Understanding American Airlines sends to employees for whom it approves FMLA leaves (and sent to plaintiff at least thirty-four times) reiterates that "[m]isrepresentation of any kind in your application for and/or use of FMLA Leave is a direct violation of the American Airlines Rules of Conduct" that is "subject to corrective action, up to and including termination." (Id. ¶5).[2]

On December 7, 2014 and January 6, 2015, plaintiff submitted two FMLA Leave of Absence Certification Forms designating absences on November 17-22, 2014, and December 17-24, 2014. (Hart Decl. Exs. 1 at 2). These forms include certification signatures in the space designated for plaintiff and her treating health care provider, specified on the forms as Polavaram. (Id.). Hart, a nurse in the Medical Department, states that she "noticed that the physician office visit dates, the start- and end-dates for the requested leave, and the medical provider's execution date appeared to have been whited-out and/or written over, and the physician's signature looked identical on both forms." (Hart Dec. ¶ 6). Hart states that she "pulled [plaintiff's] Certification Form for leave she took on November 2-5, 2014, and found that it too had the exact same physician signature." (Id.). Hart states that she "asked Dr. Polavaram to authenticate the three forms" for the November 2-5, November 17-22, and December 17-24 absences. (Id.). Polavaram responded with the following letter:

---

[2] The court addresses in its analysis herein plaintiff's objection to this and other statements in defendant's statement of material facts on the basis that they are derived from "an interested witness (Defendant's employee) whose veracity would be subject to examination and impeachment at trial." (E.g. Pl's Stmt. ¶ A.5.).

> Date: 22 January 2015
>
> To: Whomever it may concern
>
> Re: Egler, Marion-Employee number 668995
>
> This letter is to inform you the following FMLA forms copies have been received by our office and reviewed. It has been determined by this provider, these forms were not completed or signed by this provider for the following dates:
>
> (11-02-2014 until 11-05-2014) not completed or signed by this provider or anyone else in this office.
>
> (11-17-2014 until 11/22/2014) not completed or signed by this provider or anyone else in this office.
>
> (12-17-2014 until 12-24-2014) not completed or signed by this provider or anyone else in this office.
>
> If you have any questions, please feel free to contact us at (919)319-6610.
>
> Sincerely,
>
> Dr. Raj Polavaram, MD

(Hart Decl., Ex. 4). In the meantime, on January 19, 2015, plaintiff submitted an additional FMLA Certification Form for absence from January 16-21, 2015, and, upon inquiry from Hart, Polavaram sent a similar letter stating that the form was "not completed or signed by this provider or anyone else in this office." (Id., Exs. 5-6).

While the Company's investigation was pending, however, American Airlines allowed plaintiff to take the leave she requested, and returned plaintiff to work in her Reservations Agent position following each period of FMLA leave. (Def's Stmt. (DE 32) ¶ 15). Hart informed Leave

4

of Absence Administrator, Wells, that Polavaram denied completing or signing the four FMLA Certification Forms plaintiff had presented to the Company. (Id. ¶ 16). On February 9, 2015, Wells and Reservation Service Manager Kandice Pedley met with plaintiff regarding the discrepancies on plaintiff's FMLA Certification Forms. (Id. ¶ 17).

At the meeting with Wells and Pedley, plaintiff "was asked if she knew anything about the forms appearing to be altered to which she replied 'no.'" (Pl's Stmt. (DE 38) ¶ 18). Plaintiff wrote the following statement at the meeting:



(Pl's Stmt. (DE 38) ¶ 18; Pl's Ex. 2 (DE 37-2). According to plaintiff, she "was forced to write" this statement "under duress and not allowed to leave this meeting until she wrote it while Tamara Wells suggested what to write in the statement." (Pl's Stmt. (DE 38) ¶ 18).

At the conclusion of the meeting, Wells and Pedley suspended plaintiff with pay and asked her to provide any additional information clarifying the discrepancies found in the Certification Forms. (Def's Stmt. ¶ 19). When none was forthcoming, Wells terminated plaintiff's employment

on February 11, 2015 for altering FMLA forms, deemed "actions totally unacceptable [and] in direct violation of American Airlines' Rules of Conduct." (Id. ¶ 20; Termination Letter, Wells Decl. Ex. 2 (DE 31-2 at 9).

Plaintiff filed an internal appeal of her termination with Managing Director Kip Hamilton, asking Hamilton to reverse Wells' termination decision. (Def's Stmt. ¶ 21). In her appeal form, plaintiff stated as follows:

> (State the nature of the grievance – including any policy you believe was misapplied - and what relief you are seeking. Be sure to provide any relevant details to support your request.)
>
> I would Really like my job Back. As I stated, I am not guilty of these accusations. I was not given the resources or time to defend myself.

(Pl's Dep., Ex. 16 (DE 31-1 at 81). On March 6, 2015, a law firm representing plaintiff, Phair, faxed to Hamilton the following unsigned letter:

TO WHOM IT MAY CONCERN:

I am writing this letter on behalf of Marion Egler. She is a Patient here at Western Wake Internal Medicine. She has been a patient here for over nine years. I am aware that there was some confusion related to her FMLA forms. I am the doctor who has certified her FMLA forms. I stand by the diagnosis in her most recent request for FMLA leave. I am the doctor who made and verified the diagnoses. She still suffers from cervical spinal stenosis, myofascial pain, bulging C-5 disc and degenerative compressed C-6 Disc.

Her condition would have made her eligible for leave on the dates of

November 2-5, 2014

November 17-22, 2014

December 17-24, 2015

January 16-21, 2015

I in no way in my previous responses meant for it to result in Ms. Marion Egler's termination of employment. In addition, we have resolved the issues and have a system for filling out the forms so that there will no longer be any confusion related to any forms required for her employment. If you have any questions, please feel free to contact us at (919)319-6610.

Sincerely,

Dr. Raj Polavaram, MD

(Hamilton Decl., Ex. 1 (DE 31-5 at 5). On April 2, 2015, plaintiff provided to Hamilton the following letter with "Western Wake Internal Medicine" letterhead:

> Date: 13 March 2015
>
> TO WHOM IT MAY CONCERN
>
> Re: Egler, Marion
>   DOB (██/██/66)
>
> I am writing this letter on behalf of Marion Egler. She has been a patient here at Western Wake Internal Medicine for over fifteen years. I am aware that there was some confusion related to her FMLA forms. Ms. Egler is still currently a patient and was our patient at the time of the following absences. I understand there was also confusion as to which doctor certified her FMLA forms, however, I agree with the following dates of request for FMLA leave. She still suffers from neck and upper back pain due to her cervical spinal stenosis, bulging C-5 disc and degenerative compressed C-6 disc. Possible misunderstanding, miscommunication, and/or clerical errors may have led to her employment issues. Please extend Ms. Egler the benefit of doubt in this matter.
>
> Her condition would have made her eligible for leave on the dates of:
>
> November 2-5, 2014
> November 17-22, 2014
> December 17-24, 2014
> January 16-21, 2015
>
> If you have any questions, please feel free to contact our office at (919) 319-6810.
>
> Sincerely,
> [signature]
> Raj Polavaram, MD/tm

(Hamilton Decl., Ex. 2 (DE 31-5 at 7). When American Airlines sought to authenticate the two letters submitted for plaintiff's appeal, Polavaram's office responded by saying that he did not write or authorize either of them. (Def's Stmt. (DE 32) ¶ 26). According to plaintiff, "whatever changes she made to a letter involving Dr. Polavaram, those changes were made after meeting with Dr.

8

Polavaram and obtaining his consent to the changes. In addition, Phair was participating in getting the language in the letter correctly stated." (Pl's Stmt. ¶ 27).

In an original, unaltered version, of his own letter provided to Hamilton, Polavaram reiterated that he had not completed or signed the four FMLA Certification Forms at issue. (Def's Stmt. (DE 32) ¶ 29). Specifically, Dr. Polavaram stated:

> I am writing this letter on behalf of Marion Egler. She is a patient here at Western Wake Internal Medicine. She has been a patient here for over nine years. I am aware that there was some confusion related to her FMLA forms. I am not the doctor who has certified her FMLA forms. However, I agree with her most recent request for FMLA leave. She still suffers from neck and upper back pain due to her cervical spinal stenosis, bulging C-5 disc and degenerative compressed C-6. Disc.
>
> Her condition would have made her eligible for leave on the dates of
>
> November 2-5, 2014
> November 17-22, 2014
> December 17-24, 2014
> January 16-21, 2015
>
> If you have any questions, please feel free to contact our office at (919)319-6610.
>
> Sincerely,
> Raj Polavaram, MD/tm

(Pl's Dep., Ex. 18 (DE 31-1 at 84)).

On April 9, 2015, Hamilton denied plaintiff's appeal and upheld the decision to terminate her. In his letter denying appeal, Hamilton stated: "Your physician's office notified us that the letter [dated March 13, 2015] had been edited and additional information had been included that was not in his original verification." (Hamilton Decl., Ex. 2 (DE 31-5 at 9)). It again stated: "Your actions

9

as described above are not only totally unacceptable, but are also in direct violation of American Airlines Rules of Conduct." (Id.).

## COURT'S DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On cross-motions for summary judgment, the court "consider[s] each motion separately on its own merits to determine whether [any] of the parties deserves judgment as a matter of law." Defs. of Wildlife v. N. Carolina Dep't of Transp., 762 F3d 374, 392 (4th Cir. 2014). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to

be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

1. Interference Claim

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). Claims for violations of the prescriptive rights set forth in § 2612 are "known as 'interference' or 'entitlement' claims." Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 546 (4th Cir. 2006).

Plaintiff does not offer any argument or facts in opposition to summary judgment on her FMLA interference claim. Indeed, it is undisputed that defendant granted plaintiff all FMLA leave

11

she requested. (Def's Stmt. (DE 32) ¶ 15). Therefore, summary judgment is warranted on plaintiff's FMLA interference claim.

2. Retaliation claim

With respect to retaliation, the FLMA states "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). To succeed on a claim of retaliation, a plaintiff must show "that she engaged in protected activity, that the employer took adverse action against [her], and that the adverse action was causally connected to the plaintiff's protected activity." Yashenko, 446 F.3d at 551 (citation omitted). "Unlike prescriptive entitlement or interference claims, employer intent here is relevant." Sharif v. United Airlines, Inc., 841 F.3d 199, 203 (4th Cir. 2016).

"Intent can be established either by direct evidence of retaliation or through the familiar burden shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 800–06 (1973)." Id. (citing Laing v. Fed. Exp. Corp., 703 F.3d 713, 717 (4th Cir. 2013); Yashenko, 446 F.3d at 551). Under the McDonnell Douglas framework, a plaintiff must first produce sufficient evidence to establish a prima facie case that the elements of retaliation are satisfied. 411 U.S. at 802. The burden of production then shifts to the employer to rebut the prima facie presumption of retaliation and provide "some legitimate, nondiscriminatory reason" for the adverse employment action. Sharif, 841 F. 3d at 203 (quoting McDonnell Douglas, 411 U.S. at 802). "If the employer meets this burden, the presumption of retaliation is dissolved and the plaintiff resumes the burden of persuading the factfinder that the employer's proffered explanation is merely a pretext for discrimination." Id. (citations omitted). "A plaintiff may satisfy this burden by showing either that

12

the employer's explanation is not credible, or that the employer's decision was more likely the result of retaliation." Id. (citations omitted). "In any event, the plaintiff must produce sufficient evidence to create a genuine dispute of material fact such that a reasonable factfinder could conclude the adverse employment action was taken for an impermissible reason, i.e., retaliation." Id. (citations omitted).

Here, the court assumes arguendo for the purposes of this analysis that plaintiff has put forth a prima facie case of retaliation and turns to the next step under the McDonnell Douglas framework. The burden now shifts to defendants to provide "some legitimate, nondiscriminatory reason" for the adverse employment action. Sharif, 841 F. 3d at 203 (citing McDonnell Douglas, 411 U.S. at 802).

"The FMLA does not prevent an employer from terminating an employee for poor performance, misconduct, or insubordinate behavior." Vannoy v. Fed. Reserve Bank of Richmond, 827 F.3d 296, 304–05 (4th Cir. 2016). "[W]hen an employer gives a legitimate, nondiscriminatory reason for discharging the plaintiff, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." Laing v. Fed. Exp. Corp., 703 F.3d 713, 722 (4th Cir. 2013) (citation omitted).

Courts utilize the "honest belief rule" to evaluate employers' responses to claims of employment discrimination, under which "[an] employee must present evidence reasonably calling into question the honesty of his employer's belief. . . ." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (citing Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 411 (7th Cir. 1997)); see EEOC v. Sears Roebuck & Co., 243 F.3d 846, 853 (4th Cir. 2001) (holding that plaintiff had put forth sufficient evidence of pretext where the record did not support the employer's contention that the employee's supervisor "honestly believed" that the plaintiff had been

13

investigated for sexual harassment).

To demonstrate a genuine dispute of material fact a "plaintiff must produce evidence that goes beyond that which was necessary to make a prima facie showing by pointing out specific, non-speculative facts which discredit the defendant's non-retaliatory motive." Nguyen v. Austin Quality Foods, Inc., 974 F. Supp. 2d 879, 884-85 (E.D.N.C. 2013) (citation omitted). "[T]his Court does not sit as a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." DeJarnette, 133 F.3d at 299 (quotations omitted). In evaluating opinions regarding termination, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Id. (quotations omitted).

Here, defendant has carried its burden by offering a legitimate, nondiscriminatory reason for plaintiff's termination: altering FMLA leave requests and physician letter upon appeal. (Def's Stmt. ¶¶ 19-20; Termination Letter, Wells Decl. Ex. 2 (DE 31-2 at 9); Hamilton Decl., Ex. 2 (DE 31-5 at 9)).

Plaintiff fails to satisfy her burden that this nondiscriminatory explanation for her termination was pretext, dishonest, false, or "not credible, or that the employer's decision was more likely the result of retaliation." Sharif, 841 F. 3d at 203. Plaintiff argues that the court should not accept as undisputed certain statements made by defendant's employees in declarations, incorporated into defendant's statement of facts, because those employees are "interested witness[es]." (Pl's Stmt. (DE 38) at 1-3). Upon summary judgment motion, however, a non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587. Moreover, "[e]ach numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a

14

correspondingly numbered paragraph in the opposing statement." See Local Civil Rule 56.1(a)(2). Plaintiff's contention defendant's employees are "interested witness[es]" is not a "specific fact[] showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587. Accordingly, this argument is unavailing.

Plaintiff also suggests that there is a genuine issue regarding pretext because "she emphatically denies altering any of the four (4) FMLA forms before submitting any of said forms to the Defendant for approval," and "Defendant has come forward with no evidence . . . that [plaintiff] herself altered any of those four FMLA forms." (Pl's Stmt. (DE 38) at 2). Plaintiff's suggestion is unavailing for multiple reasons. First, these asserted facts are immaterial to pretext. It is not the role of the court "to decide whether the reason [given] was wise, fair, or even correct." Laing, 703 F.3d at 722. Rather, plaintiff must demonstrate that the reason given by defendant was dishonest, false, or "not credible, or that the employer's decision was more likely the result of retaliation." Sharif, 841 F. 3d at 203.

Second, whether plaintiff "emphatically denies altering any of the . . . forms" during this litigation is not relevant to whether she demonstrated to defendant her compliance with Company rules at the time of her termination, or during the investigation thereof. Her responses to inquiry by defendant were, instead, at best, equivocal. (See, e.g., Pl's Stmt. (DE 38) ¶ 18 (stating that at the meeting with Wells and Pedley, plaintiff "was asked if she knew anything about the forms appearing to be altered to which she replied 'no'"). Indeed, it is undisputed that she provided two letters purporting to be from her physician upon appeal, which her physician was unable to authenticate. (Def's Stmt. (DE 32) ¶ 26).

Third, plaintiff's argument that defendant "has come forward with no evidence . . . that

[plaintiff] herself altered any of these . . . forms" (Pl's Stmt. (DE 38) at 2) is an incorrect description of the record. Defendant has in fact come forward with substantial evidence to support its determination that plaintiff herself altered the forms, including contemporaneous statements by plaintiff's own physician that he did not sign the FMLA forms, (Hart Decl., Ex. 4, 5-6), and the undisputed fact plaintiff altered her physician letter upon appeal. (Def's Stmt. ¶ 26; Pl's Stmt. ¶ 27). Whether plaintiff disputes the inferences drawn by defendant in making that determination does not tend to show that defendant was dishonest or relying on pretext in its reasons for terminating plaintiff.

In any event, even accepting plaintiff's emphatic denials, and accepting that defendant did not come forward with evidence that she altered the forms, plaintiff has failed to demonstrate a genuine issue of fact that defendant did not honestly believe plaintiff had engaged in conduct justifying termination. It is significant in this respect that during her own appeal of her termination, which had been based upon allegations of unauthorized use of her physician's signature, defendant received on behalf of plaintiff two letters that her physician could not authenticate. (Def's Stmt. ¶¶ 26, 29). Plaintiff suggests that such changes "were made after meeting with Dr. Polavaram and obtaining his consent to the changes." (Pl's Stmt. ¶ 27). But, plaintiff's subjective method and reason for the changes is beside the point. Under the controlling standard, it is not her perspective of her actions that is material, but rather her employer's perspective. See Sharif, 841 F. 3d at 203; Laing, 703 F.3d at 722; DeJarnette, 133 F.3d at 299; Sears Roebuck & Co., 243 F.3d at 853. It is wholly implausible to infer that defendant was acting dishonestly in terminating plaintiff in such circumstances.

The court has reviewed the remaining arguments raised by plaintiff concerning the legal

standard for determining pretext for retaliation, including her challenge to the "honest belief" standard, (Pl's Mem. (DE 40) at 9-11), and plaintiff has not provided any basis for deviating from the controlling Fourth Circuit law as set forth herein. Accordingly, where plaintiff has not met her burden of demonstrating a genuine issue of material fact as to pretext, defendant's motion for summary judgment must be granted.

## CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion for summary judgment. (DE 30). The clerk is DIRECTED to close the case.

SO ORDERED, this the 21st day of February, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge